# United States Court of Appeals
# for the Federal Circuit

———————

**AIA AMERICA, INC., FKA ALZHEIMER'S INSTITUTE OF AMERICA, INC.,**
*Plaintiff-Appellant*

**v.**

**AVID RADIOPHARMACEUTICALS,**
*Defendant-Appellee*

**TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES,**
*Defendants*

———————

2016-2647

———————

Appeal from the United States District Court for the Eastern District of Pennsylvania in No. 2:10-cv-06908-TJS, Judge Timothy J. Savage.

———————

Decided: August 10, 2017

———————

PETER BUCKLEY, Fox Rothschild, LLP, Philadelphia, PA, argued for plaintiff-appellant.

LAWRENCE SCOTT BURWELL, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, argued for defendant-appellee. Also represented by CHARLES E.

LIPSEY; LAURA POLLARD MASUROVSKY, Washington, DC; MANISHA A. DESAI, Eli Lilly and Company, Indianapolis, IN.

———————

Before NEWMAN, LOURIE, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

AIA America, Inc. appeals the district court's award of attorney's fees to Avid Radiopharmaceuticals and the Trustees of the University of Pennsylvania. Because the Seventh Amendment right to a jury trial does not apply to requests for attorney's fees under § 285 of the Patent Act, the district court did not err by making factual findings not foreclosed by the jury's verdict on standing, and AIA's due process rights were not violated, we affirm.

I

AIA America, Inc. sued Avid Radiopharmaceuticals and the Trustees of the University of Pennsylvania (collectively, Avid) for infringement of U.S. Patent Nos. 5,455,169 and 7,538,258. The patents are generally directed to research technologies stemming from the discovery of the "Swedish mutation," a genetic mutation that is associated with early-onset familial Alzheimer's disease. For example, the '169 patent claims a nucleic acid encoding a human amyloid precursor protein with the Swedish mutation. Dr. Michael J. Mullan is named as the sole inventor of both patents.

Avid, in response, alleged that AIA lacked standing to assert the '169 and '258 patents. According to Avid, Ronald Sexton, AIA's founder, and Dr. Mullan, the purported sole inventor, orchestrated a scheme to appropriate for themselves inventions from Imperial College (Imperial) in London and the University of South Florida (USF).

Avid argued that the scheme began when members of Dr. John Hardy's Imperial research group (including Dr.

Mullan, then a Ph.D. student) made the groundbreaking discovery of one of the first gene mutations that causes Alzheimer's disease. The gene mutation was later called the "London Mutation." Under a sponsored research agreement, Imperial gave options to that discovery to Athena, a pharmaceutical company.

Dr. Hardy and his team believed the Athena agreement undervalued their research. Soon thereafter, Mr. Sexton, a Kansas City businessman who had no experience in scientific research but saw a business opportunity for himself, offered Dr. Hardy and his team a better deal than they had with Athena. Initially, Dr. Hardy and his team attempted to undermine the agreement with Athena by misrepresenting the origins of their work on the London Mutation. This attempt failed when Imperial determined that it owned the discovery under United Kingdom law by its employment of the inventors. Dr. Hardy, his team, and Mr. Sexton then "decided to make sure [they] didn't give anything else away." J.A. 2759:13–14.

Therefore, when Dr. Hardy started investigating Alzheimer's mutations in Swedish families and realized the data was "screaming" that there was a mutation in the DNA, he decided not to identify the actual sequence of the mutation at Imperial. JA 2790:9–18. Instead, he sent the DNA to Dr. Mullan, who had graduated from Imperial and moved to USF, so the DNA could be sequenced there. To hide the involvement of Dr. Hardy and the Imperial researchers, the resulting patent application on the Swedish mutation was filed in Dr. Mullan's name alone.

To further their scheme, Mr. Sexton, Dr. Hardy, and Dr. Mullan sent false letters to Imperial denying Dr. Hardy's involvement in the discovery. The group also misled USF into believing that this discovery related to prior research to which Imperial had rights, thereby securing USF's signature on a letter waiving USF's ownership of the newly discovered Swedish mutation. After

the patent application was filed, it was immediately assigned to Sexton's newly-formed company, AIA.

AIA, meanwhile, maintained that Dr. Mullan was properly named the sole inventor of the '169 and '258 patents and that Dr. Mullan's employer, USF, waived any ownership rights in the patents.

The district court ordered targeted discovery and held a jury trial on AIA's standing, in which twelve witnesses testified and over 200 exhibits were introduced. As part of the trial, Dr. Hardy testified about the conspiracy by which, he, Dr. Mullan, and Mr. Sexton denied Imperial and USF rights in the Swedish mutation. The jury determined that USF did not knowingly and intentionally waive its ownership rights to the Swedish mutation and that Dr. Hardy was a co-inventor. Based on the jury's verdict, the district court found AIA lacked standing to assert the '169 and '258 patents and entered judgment in favor of Avid. We summarily affirmed that decision. *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals*, 560 F. App'x 996 (Fed. Cir. 2014).

Avid subsequently moved for attorney's fees. The district court allowed the parties to submit extensive briefing, evidence, and declarations on the issue of fees. After holding a hearing in which AIA was allowed to present arguments in opposition to the motion, the court awarded fees in the amount of $3,943,317.70 to Avid. AIA appeals the award of attorney's fees, but not the amount awarded. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (2012).

## II

We first address AIA's argument that the Seventh Amendment requires a jury trial to decide the facts forming the basis to award attorney's fees under § 285 of the Patent Act. Specifically, AIA argues that when an award of attorney's fees is based in part or in whole on a party's state of mind, intent, or culpability, only a jury may

decide those issues.  We review de novo the question of whether a party is entitled to a jury trial.  *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1339 (Fed. Cir. 2001).

A litigant has a right to a jury trial if provided by statute, or if required by the Seventh Amendment.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998).  With no right to a jury trial provided in the statute, AIA relies solely on the Seventh Amendment.

The Seventh Amendment preserves the right to a jury trial for "[s]uits at common law."  U.S. Const. amend. VII.  The phrase "suits at common law" refers to suits in which only legal rights and remedies were at issue, as opposed to equitable rights and remedies.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).  A legal remedy requires a jury trial on demand, while an equitable remedy does not implicate the right to a jury trial.  *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974).  A two-step inquiry determines whether a modern statutory cause of action involves only legal rights and remedies.  *Tull v. United States*, 481 U.S. 412, 417–18 (1987).  First, we must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  *Id.* at 417.  "Second, we examine the remedy sought and determine whether it is legal or equitable in nature."  *Id.* at 417–18.  The Supreme Court has stressed the second step of this test is the more important of the two.  *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) ("The second inquiry is the more important in our analysis.").

Turning to the first step, the nature of the claim, English courts for centuries have allowed claims for attorney's fees in both the courts of law and equity.  Arthur L. Goodhart, *Costs*, 38 Yale L. J. 849, 851–54 (1929).  But when brought in the courts of law, judges, not juries,

determined attorney's fees. *Id.* Therefore, since either a judge in the court of law or an equity court would determine attorney's fees, this implies that attorney's fees generally do not involve legal rights.

As to the second step, the nature of the remedy, the fact that the relief sought is monetary does not necessarily make the remedy "legal." *Terry*, 494 U.S. at 570. In the context of attorney's fees, when attorney's fees are themselves part of the merits of an action, they are regarded as a "legal" remedy. For example, a lawyer's fee claim against a client is a question for the jury, *Simler v. Conner*, 372 U.S. 221, 223 (1963) (per curiam), and a claim for attorney's fees under a contractual indemnification provision is a contractual "legal right" that is also a question for the jury, *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1315–16 (2d Cir. 1993). By contrast, when attorney's fees are awarded pursuant to a statutory prevailing party provision, they are regarded as an "equitable" remedy because they raise "issues collateral to and separate from the decision on the merits." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) (internal quotation marks and citations omitted). Since Avid sought fees as a prevailing party under 35 U.S.C. § 285, the attorney's fees in this action are properly characterized as an equitable remedy.

Both steps of the *Tull* test reflect that requests for attorney's fees under § 285 are equitable and do not invoke the Seventh Amendment right to a jury trial. *See Swofford v. B & W, Inc.*, 336 F.2d 406, 413–14 (5th Cir. 1964) (holding there is no right to a jury trial for attorney's fees under § 285).

Despite the foregoing, AIA argues that if a decision on attorney's fees involves considerations of a party's state of mind, intent, and culpability, then those questions must be presented to a jury under the Seventh Amendment. AIA, however, has pointed to no cases finding that once

an issue is deemed equitable, a Seventh Amendment right to a jury trial may still attach to certain underlying determinations. Nor does AIA's argument fit within the Supreme Court's framework of when the right to a jury trial attaches to a claim. In 18th-century England, if a claim was in the court of equity, the equity court had the discretion to submit a claim to a jury but was never required to submit any issue to a jury, regardless of whether it was deciding issues of state of mind, intent, and culpability. *Garsed v. Beall*, 92 U.S. 685, 695 (1875). Finally, AIA's position is at odds with other statutory prevailing party provisions. *See, e.g.*, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375 (1979) ("[Title VII] expressly allows the prevailing party to recover his attorney's fees . . . . Because the Act expressly authorizes only equitable remedies, the courts have consistently held that neither party has a right to a jury trial."). In sum, AIA's right to a jury trial under the Seventh Amendment was not violated.

## II

AIA next argues that the district court erred by making factual findings on issues that were not considered by a jury. According to AIA, our decisions in *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308 (Fed. Cir. 2001) and *Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996) precluded the district court from making factual determinations about AIA's state of mind, intent, and culpability since these questions were never presented to the jury.

Our decisions in *Door-Master* and *Jurgens* stand for the straight-forward proposition that after a trial on legal issues, a court may not make findings contrary to or inconsistent with the resolution of any issues necessarily and actually decided by the jury. *See also Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012); *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 994 (Fed. Cir. 1995) ("[T]he court may

not make findings in conflict with those of the jury."). These decisions do not prevent a court, when deciding equitable issues, from making additional findings not precluded by the jury's verdict. *See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) (holding that in the context of the equitable defense of inequitable conduct, "a disputed finding of intent to mislead or to deceive is one for the judge to resolve, not the jury"). Thus, the district court was not foreclosed from making additional findings about AIA's state of mind, intent, and culpability.

## III

Finally, AIA argues that its due process was violated because the district court did not give AIA the opportunity to submit evidence regarding its intent, state of mind, or culpability. Contrary to AIA's argument, the district court provided both parties the opportunity to fully brief the motion seeking attorney's fees and allowed both parties to submit any additional evidence and affidavits. The district court also held a hearing on the motion where AIA was allowed to present arguments. To the extent AIA believes its due process was violated because the district court did not allow it to present evidence regarding intent to a jury, AIA was not entitled to a jury trial on the issue of attorney's fees. Accordingly, the district court did not deprive AIA of due process.

## IV

Because there is no right to a jury trial for attorney's fees under § 285, because the district court did not err by making factual findings not foreclosed by the jury's verdict, and because AIA was not deprived of due process, we affirm.

## **AFFIRMED**

COSTS

Costs to Appellee.