PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3000 & 17-1851
_____

CITY SELECT AUTO SALES INC., A NEW JERSEY
CORPORATION, INDIVIDUALLY AND AS THE
REPRESENTATIVE OF A CLASS OF
SIMILARLY SITUATED PERSONS,

Appellant

v.

DAVID RANDALL ASSOCIATES, INC.;
RAYMOND MILEY, III

v.

CAROLINE ABRAHAM, d/b/a Business to Business
Solutions; JOEL ABRAHAM, d/b/a Business to Business
Solutions
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-11-cv-02658)
District Judge: Honorable Jerome B. Simandle
_____

Argued January 24, 2018
Before: HARDIMAN, VANASKIE, and SHWARTZ,
*Circuit Judges*.

(Filed: March 16, 2018)


Daniel J. Cohen [ARGUED]
Todd A. Lewis
Bock Hatch Lewis & Oppenheim
134 North La Salle Street
Suite 1000
Chicago, IL 60602

Alan C. Milstein
Sherman Silverstein Kohl Rose & Podolsky
308 Harper Drive
Suite 200, Eastgate Corporate Center
Moorestown, NJ 08057
*Counsel for Appellant*

F. Emmett Fitzpatrick, III [ARGUED]
Flamm Walton
794 Penllyn Pike
Suite 100
Blue Bell, PA 19446
*Counsel for Appellees*

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Plaintiff City Select Auto Sales, Inc. received unsolicited fax transmissions advertising the services of Defendant David Randall Associates, Inc. (David Randall). Claiming that those faxes were sent in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, City Select sued David Randall and its former president and co-owner, Raymond Miley, III. The case against Miley was tried to a jury and he was found not liable under the TCPA. After the United States District Court for the District of New Jersey entered judgment in favor of Miley and denied City Select's motion for a new trial, City Select filed this timely appeal.

I

A

At all relevant times, David Randall was a Pennsylvania-based commercial roofing company. Miley was its president and, with his wife, owned 90 percent of the company. The company's office manager, April Clemmer, reported to Miley and her responsibilities included "[b]asic secretarial duties" and "work with the service department." App. 354.

In March, April, and May 2006, David Randall hired Business to Business Solutions (Business Solutions) to fax

unsolicited advertisements to thousands of fax numbers. The first transmissions were sent on March 29 after Clemmer, with Miley's handwritten approval, confirmed by fax the content of the ad, the quantity of faxes to be sent, and the areas to be targeted. David Randall received complaints in response to that initial foray into fax advertising, and Clemmer contacted Business Solutions to have several fax numbers removed from the list. On March 31, Business Solutions sent a second wave of faxes, which prompted several recipients to ask that their fax numbers be taken off the list. Two days later came a third burst of transmissions and on May 15, 2006, Business Solutions sent a fourth and final "blast" of 12,000 faxes.

B

1

City Select (on behalf of itself and a class of similarly-situated fax recipients) sued both David Randall and Miley in the United States District Court for the District of New Jersey. City Select's complaint alleged that the four fax campaigns had violated the TCPA's prohibition against unsolicited fax advertising. After discovery, the parties filed summary judgment motions. The Court denied David Randall's and Miley's motion for summary judgment. *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 2014 WL 4755487, at *1, *4–10 (D.N.J. Sept. 24, 2014). It also denied City Select's motion for summary judgment against Miley. It granted City Select's motion against David Randall, however, and entered judgment against the company in the amount of $22,405,000.

*City Select Auto Sales, Inc. v. David/Randall Assocs.*, *Inc.*, 96 F. Supp. 3d 403, 416–22, 427–28 (D.N.J. 2015).[1]

The case proceeded to trial on the question of Miley's personal liability under the TCPA. The evidence on that point was mixed. On direct examination, Clemmer testified that Miley first suggested fax advertising through Business Solutions and instructed her to contact the company to inquire about its services. Clemmer said she contacted Business Solutions on Miley's behalf, reported back to him, and needed his approval to engage such advertising services. She also testified that Miley reviewed proposed advertisements, authorized payment for the same, and generally acted as the "ultimate decision-maker" in approving the content, quantity, timing, and targeting of the transmissions. App. 361. On cross-examination, however, Clemmer admitted that she had no actual recollection of the fax campaigns or Miley's involvement in them and that her testimony was based on "[t]he way things worked." App. 444. She also stated that she was the only David Randall employee who communicated directly with Business Solutions, and that Miley, in the ordinary course, would not have seen or reviewed all of Clemmer's outgoing fax communications.

The jury also heard Miley's response to an interrogatory, Miley's pretrial stipulations, and Miley's own testimony. In his interrogatory response, Miley conceded that David Randall was "aware that . . . Miley participated in

---

[1] David Randall filed a third-party complaint and obtained a default judgment for $22,405,000 against Caroline and Joel Abraham, d/b/a Business to Business Solutions. *City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.*, 2015 WL 4507995, at *4–5 (D.N.J. July 23, 2015).

decisions to send some facsimile transmissions." App. 644. Moreover, the jury was told that Miley stipulated that: (1) Miley was in charge of David Randall's marketing and advertising; (2) Miley instructed Clemmer to investigate Business Solutions's fax services; (3) Clemmer contacted Business Solutions on the company's and Miley's behalf and relayed the information she received to Miley; and (4) with Miley's help, Clemmer sent information to Business Solutions about the fax advertisements David Randall wished to send. Miley testified in person, however, that he did not: create the advertisement Business Solutions sent; discuss anything related to the campaigns with Clemmer; review any communications to or from Clemmer relating to the fax blitzes; communicate with Business Solutions; or authorize any of the conduct at issue in the case. Indeed, he stated that although he generally signed checks on behalf of David Randall, he "had no involvement in this at all, none," App. 618; *see also* App 624 ("I've had no involvement, meaningful or not.").

2

Based on the evidence presented at trial, the District Court produced a set of draft jury instructions. As originally proposed, draft Instruction 17 required the jury to find that Miley had a "high level" of personal involvement to hold him liable. App. 651. City Select objected to that language during the charge conference. It then consented to the District Court's suggestion to change "high" to "significant" and to include a reference to Instruction 18 after the term "significant." App. 652–53.

City Select also objected to draft Instruction 18, which stated that to hold a corporate officer liable under the TCPA, "[t]he officer must have knowledge that he is directly

6

participating in or authorizing the conduct in question." App. 654. City Select asserted that there was no authority for such a knowledge requirement. The District Court disagreed, explaining that "[t]he reason I believe the individual liability of a corporate officer requires that the person have knowledge, that what they're doing is authorizing fax advertising, is because of the enormous liability . . . that can trigger for the person." App. 655.

The District Court then gave the jury the following instruction (Instruction 17) as to TCPA liability:

> As I instructed you at the beginning of this trial, a TCPA claim for sending an unsolicited fax generally requires proof that: (1) the defendant utilized or caused to be utilized a telephone facsimile machine to send one or more faxes; (2) that the transmissions constituted advertisements; (3) that the defendant sent the transmissions without the recipient's consent and outside of any one of the statutory exemptions; (4) that the defendant qualifies as a "sender" for purposes of the TCPA, that is, the entity on whose behalf an unsolicited facsimile advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement, or a person acting on behalf of that entity; and, in the case of an individual, (5) that the individual defendant had a significant level of personal involvement in the unlawful fax transmissions, as explained below.

App. 307. The Court described the requirements for personal liability (Instruction 18) as follows:

> As a general matter, if a corporation is found to have violated a federal statute, its officers will not be personally liable solely because of their status as officers. Under the TCPA, however, an individual acting on behalf of a corporation may, under certain limited circumstances, be held personally or individually liable for the corporation's violations of the TCPA if the individual: (1) had direct, personal participation in the conduct found to have violated the TCPA, or (2) personally authorized the conduct found to have violated the TCPA. This requirement is phrased in the alternative; it is sufficient if Plaintiff proves either that Mr. Miley had direct, personal participation in the conduct found to have violated the TCPA, or that Mr. Miley personally authorized the conduct found to have violated the TCPA.

> Thus, the personal liability of a corporate director or officer must be founded upon his active oversight of, or control over, the conduct that violated the TCPA, rather than merely tangential involvement. Involvement is "tangential" if it is routine, passive or ministerial.

> The officer must have knowledge that he is directly participating in or authorizing the fax advertising, but he need not know that the conduct violates the TCPA. Whether the

8

> corporate officer knows that the conduct violates the TCPA is not relevant to your consideration.

App. 309–10. The jury also was given a verdict sheet that asked them, in Question 1, to decide whether Miley "ha[d] direct, personal participation in the . . . unsolicited fax campaign[s]." App. 320–21.

> During its deliberation, the jury requested
>
> clarification for the degree of personal participation for question #1, for the first unsolicited fax campaign. Our instructions indicate we have to determine if Miley had a "<u>significant level</u>" of personal involvement in the unlawful fax transmissions, or active oversite [sic], not routine or passive. This is not the wording of question #1, where it only states personal participation. Thank you.

App. 318. After considering the parties' positions, the Court told the jury that

> The requirement of a "significant level of personal involvement in the unlawful fax transmissions" applies to determining both whether he (1) had direct, personal participation in the conduct found to have violated the TCPA, or (2) personally authorized the conduct found to have violated the TCPA.
>
> As explained in Instruction No. 18, such significant level of personal involvement requires the officer's active oversight of, or

9

control over, the conduct that violated the TCPA, rather than merely tangential, routine, passive or ministerial involvement. He must, at a minimum, have knowledge that he is directly participating in or authorizing the fax advertising, or his involvement will not be significant.

Thus, for example, if you find, in considering Question 1, that Mr. Miley had direct, personal participation at a level of involvement that was "significant," then your answer will be Yes. Otherwise, your answer will be No.

App. 319. The jury answered "No," absolving Miley of personal liability.

City Select moved for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, arguing that the District Court erred in instructing the jury and in responding to the jury's question. The Court denied the motion. *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 2017 WL 1170828, at *4–10 (D.N.J. Mar. 28, 2017). As to Instruction 17, it reasoned that "[t]he use of the word 'significant' was appropriate explanatory commentary," *id.* at *6, and it used that word "to clarify that the Defendant could not merely be tangentially involved in the operation," *id.* at *7. The Court also noted that had the jury believed Clemmer's testimony, it "easily could have found that Mr. Miley was 'significantly' involved." *Id.* The Court also declined to reconsider its inclusion of the knowledge requirement in Instruction 18, reasoning that "[i]t is unclear how one could have direct and personal participation in a campaign if one did not have any knowledge of his or her actions," and again that if the jury had

believed Clemmer's testimony, it would not have had a problem finding the required level of knowledge. *Id.* at \*10.

II[2]

A

City Select appeals the District Court's instructions as to personal liability under the TCPA. As an initial matter, we note that there is a real question as to whether Miley can be held liable under the statute at all.

We start with the text of the TCPA and its implementing regulations. The TCPA declares it "unlawful for *any person* within the United States . . . to use any telephone facsimile machine . . . or other device to *send*, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). The statute delegates to the Federal Communications Commission (FCC) authority to "prescribe regulations to implement the requirements of . . . subsection [227(b)]." *Id.* § 227(b)(2). And pursuant to that authority (which includes the power to make rules enforceable through the TCPA's express private right of action, *Id.* § 227(b)(3)(A)), the agency has clarified that the sender subject to liability under the statute is the person "on whose behalf [the faxes] are transmitted," *In re Rules and Regulations*

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376, 386–87 (2012). Our jurisdiction lies under 28 U.S.C. § 1291.

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 (1995) [hereinafter *1995 Order*].[3]

City Select's argument that Miley is a "sender" relies on language from the *1995 Order* stating that liability falls on the "author or originator" of the faxes, and from the Eleventh Circuit's statement in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), that the "on whose behalf" standard is meant to place liability "at the source of the offending behavior." City Select Supp. Br. 1–2 (quoting *1995 Order*, 10 FCC Rcd. at 12407; *Palm Beach Golf Ctr.*, 781 F.3d at 1257). Miley is a sender, City Select asserts, "because [he] was the 'author or originator'" of the relevant faxes. *Id.* at 2.

City Select's argument is questionable. To the extent Miley planned and executed a fax campaign, he did so in his corporate capacity rather than his personal one. "[I]ndividuals ordinarily are shielded from personal liability when they do business in a corporate form, and . . . it should not lightly be inferred that Congress intended to disregard this shield." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998)) (discussing direct liability of corporate officers under the Fair Labor Standards Act). The question is not whether Miley was an "author" of unsolicited faxes in the colloquial sense, but whether Congress and the FCC intended that we look behind the corporate form and impose personal liability on officers who act on the corporation's behalf rather than their own.

---

[3] City Select relies on this interpretation, and neither party questions whether we should defer to it.

We question whether Congress intended as much in cases like this one. Only one court of appeals has explored the "on whose behalf" standard in a precedential opinion. In *Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016), the Sixth Circuit confronted another case in which a company had hired Business Solutions to conduct fax advertising. Synthesizing existing authority on the point, the court explained that "on whose behalf" should not be interpreted "with a layperson's understanding of what that phrase might mean." *Id.* at 899. Rather, it is a "term of art that should be interpreted in a way that seeks to hold liable the [actor] ultimately at fault in causing a TCPA violation." *Id.*

*Alco Vending* involved determining which of two companies—Business Solutions or the defendant—would be held liable for a violation, not allocating liability between a corporation and its own officer as this case does. So, in addition to addressing the concerns raised by the Sixth Circuit in *Alco Vending*, courts facing situations like ours will have to give some weight to federal law's general presumption of respect for the corporate form.

One possibility is that courts will account for that presumption by considering whether the relationship between the corporation and the individual defendant was "eccentric under accepted norms" of corporate conduct such that faxes were really sent on behalf of the individual instead of the entity. *Cf. United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (holding that notwithstanding the presumption that parent corporations are not liable for the acts of their subsidiaries, a parent may be directly liable under the Comprehensive Environmental Response, Compensation, and Liability Act as an "operator" of a subsidiary's facility when its "actions . . . are eccentric under accepted norms of parental oversight"). We think the result of

this case under that test would be straightforward: Miley was not in privity with Business Solutions, only David Randall was. The faxes advertised David Randall's services, not Miley's. The company—not Miley—paid Business Solutions. And most importantly, there is no allegation, much less any evidence, that Miley disregarded or violated corporate norms with respect to David Randall. Under these circumstances, the faxes were sent on behalf of David Randall, so it is hard to see how Miley could be deemed a "sender" under the TCPA.

The question of whether Miley was a "sender," however, was never presented to the District Court, and it was raised here only on our order requesting supplemental briefing. Prior to our mention of the issue, the parties and the District Court relied on the longstanding consensus among district courts that the contours of corporate officer liability under the TCPA are defined by federal common law rather than by the text of the statute. On that view, an officer is personally liable for an illegal fax if he "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). As initially briefed, this appeal was about whether the District Court properly instructed the jury on that theory.

We doubt as well, however, whether such common-law personal-participation liability is available against corporate officers under the TCPA. To be sure, the idea that Congress may establish statutory liability without expressly providing for it is not without precedent. Courts generally assume that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related . . . liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (discussing

14

vicarious liability). But the United States Code abounds with examples of Congress expressly authorizing personal-participation liability or something quite like it. For example, corporate antitrust violations are "deemed to be also that of the individual directors, officers, or agents . . . who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation." 15 U.S.C. § 24. Because Congress has demonstrated in many statutes that it "kn[ows] how to impose" personal-participation liability "when it cho[oses] to do so," the argument that Congressional silence indicates an intent to do so here is a weak one at best. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994).

Moreover, to the extent that some of our cases appear to hold that traditional forms of common-law personal liability remain available under federal statutes by default, that assumption may no longer be valid. More than 20 years ago, the Supreme Court held in *Central Bank of Denver* that where "the text of the 1934 Act [did] not itself reach those who aid and abet a § 10(b) violation," "that conclusion resolve[d] the case" because "[i]t is inconsistent with settled methodology in § 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text." *Id.* at 176–77.

*Central Bank of Denver* addressed aiding-and-abetting liability rather than personal-participation liability, but we see little reason why its reasoning would not apply with equal force here. Under the circumstances just described, the fact that personal-participation liability was available against corporate officers at common law (emphasized by our colleague's concurring opinion) would not seem dispositive. As the Court made clear in *Central Bank of Denver*, it would have reached the same result "[e]ven assuming . . . a deeply rooted

15

background of aiding and abetting tort liability." *Id.* at 184. Put simply, in the wake of *Central Bank of Denver*, "statutory silence" as to the continuing availability of common-law liability arguably "means there is none." *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc) (Posner, J.).

We may, of course, affirm for any basis supported by the law and the record. *See, e.g.*, *Migliaro v. Fidelity Nat'l Indemnity Ins. Co.*, 880 F.3d 660, 664 n.6 (3d Cir. 2018). And carried to their logical ends, our doubts as to the existence of either a statutory or common-law basis for Miley's liability would permit us to affirm the judgment of the District Court on the ground that Miley cannot be held liable under the TCPA at all. Yet we are reluctant to decide such an important question when it was neither litigated in the District Court nor fully briefed and argued on appeal. Accordingly, we will assume without deciding that Miley may be held liable for David Randall's TCPA violations under a personal-participation theory. For the reasons that follow, however, we will affirm the judgment of the District Court because we perceive no reversible error in the jury instructions.

B

We exercise plenary review of a district court's jury instruction to determine whether the instruction misstated the applicable law. *Egan v. Del. River Port Auth.*, 851 F.3d 263, 269 (3d Cir. 2017). City Select argues that the Court erred in instructing the jury that it needed to find that Miley's involvement was "significant," that he exercised "active oversight," and that he had "knowledge that he [was] directly participating in or authorizing the fax advertising." City Select Br. 25–26. We disagree.

Assuming that personal-participation liability is in fact available under the TCPA, a corporation's officer "may be personally liable under the [statute] if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Am. Blastfax*, 164 F. Supp. 2d at 898; *see also, e.g.*, *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014); *Balt.-Wash. Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 745 (D. Md. 2008). In other words, a corporate officer can be personally liable if he "actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct." *Am. Blastfax*, 164 F. Supp. 2d at 897.[4]

The District Court's instructions did not misstate the applicable law. First, Instruction 17's use of the words "significant level," App. 307, plainly referred to Instruction 18's provisions that Miley could be liable if he "(1) had direct, personal participation in the conduct found to have violated the TCPA, or (2) personally authorized the conduct found to have violated the TCPA," and its additional statement that liability for an officer "must be founded upon his active oversight of, or control over, the conduct that violated the TCPA, rather than merely tangential involvement," App. 309. Those requirements were simply concrete descriptions of what

---

[4] Some courts have required more, holding that "[s]ome showing of intentional misconduct or gross failure to implement policies that comply [with the TCPA] should be required." *Appelbaum v. Rickenbacker Grp., Inc.*, 2013 WL 12121104, at *3 (S.D. Fla. July 31, 2013) (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885, at *4 n.1 (S.D. Fla. Mar. 27, 2013)).

constitutes a "significant" level of involvement, and the word "significant" did not impose a higher burden of proof.

Second, the District Court appropriately answered the jury's question about the word "significant" because, in its response, the Court tied that word to the requirement that the officer exercised "active oversight of, or control over, the conduct that violated the TCPA, rather than merely tangential, routine, passive or ministerial involvement." App. 319. Third, that other courts have not used the word "significant" does not mean that the District Court's instructions were contrary to those decisions. Indeed, the use of the word "significant" is consistent with cases that have held that corporate officers can be personally liable when they "actively oversaw and directed th[e] conduct." *Am. Blastfax*, 164 F. Supp. 2d at 897. Fourth, the District Court did not erroneously add an element of proof regarding a defendant's state of mind. Requiring a finding that the defendant-officer had "knowledge that he [was] directly participating in or authorizing the fax advertising," App. 309, was simply part of proving direct participation. An officer could not have directly and personally participated in a fax advertising campaign without having knowledge of his actions. Accordingly, the District Court did not err in instructing the jury.[5]

---

[5] Even assuming the District Court erred in instructing the jury, any error was harmless because it is "highly probable that the error did not contribute to the judgment." *Egan*, 851 F.3d at 276 (citation and internal quotation marks omitted). As the District Court noted, Clemmer's and Miley's testimonies differed in significant ways. In finding in favor of Miley, the jury necessarily rejected Clemmer's testimony.

## C

City Select also contends that the District Court erred in denying its motion for a new trial. A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), but "it should do so only when the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand," *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (alteration, citation, and internal quotation marks omitted). We review an order denying a motion for a new trial pursuant to Rule 59 for abuse of discretion. *Id.* Because the District Court did not err in instructing the jury, it did not abuse its discretion in refusing to grant a new trial based on those instructions.

## III

For the reasons stated, we will affirm the District Court's judgment and order.

SHWARTZ, <u>Circuit Judge</u>, concurring.

I agree with my colleagues that the District Court's jury instructions were not erroneous and its judgment should be affirmed. However, the majority questions—in dicta—whether a corporate officer may be held personally liable under the TCPA. I write separately because a corporate officer indeed may be held personally liable under the TCPA for sending unsolicited fax advertisements for the officer's corporation.

I

Like the majority, I start with the statute's text. The TCPA makes it "unlawful for any person within the United States . . . to use any telephone facsimile machine . . . to send[ ] to a telephone facsimile machine[ ] an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C). Any "person" includes individuals and corporations. 1 U.S.C. § 1. The statute is silent, however, "as to who should be classified as a sender of unsolicited fax advertisements." <u>Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.</u>, 781 F.3d 1245, 1256 (11th Cir. 2015). Faced with this silence, the FCC addressed the question of whether fax broadcasters can be liable under the TCPA for sending unwanted faxes on behalf of another. The FCC stated that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. 12391, 12407 (1995). That interpretation, however, does not address whether individuals such as

1

corporate officers who authorized a broadcaster to send fax advertisements may be held liable.

Given the statute's and FCC's silence on this particular question, we look to the legislative backdrop to the TCPA. The TCPA codifies common law torts such as invasion of privacy, nuisance, and trespass to chattels. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012) (stating that Congress enacted the TCPA to, among other things, curtail "intrusive invasion[s] of privacy" (citation and internal quotation marks omitted)); Maryland v. Universal Elections, Inc., 729 F.3d 370, 376-77 (4th Cir. 2013) (explaining that the TCPA is meant to protect privacy); Bell v. Survey Sampling Int'l, LLC, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *3 (D. Conn. Mar. 15, 2017) (explaining that the TCPA embodies the common-law tort of invasion of privacy); Klein v. Hyundai Capital Am., No. 8:16-cv-01469-JLS-JCGx, 2016 WL 10519281, at *2 (C.D. Cal. Dec. 6, 2016) (stating that "'[t]he TCPA codifies one application of the long-recognized common law tort of invasion of privacy' as well as 'the tort of nuisance.'" (alterations omitted) (quoting LaVigne v. First Cmty. Bancshares, Inc., No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *7 (D.N.M. Oct. 19, 2016)); Mey v. Got Warranty, Inc., 193 F. Supp. 3d 641, 645, 647 (N.D.W. Va. 2016) (stating that "the TCPA can be seen as merely liberalizing and codifying the application of th[e] common law tort [of intrusion-upon-seclusion as invasion of privacy] to a particularly intrusive type of unwanted telephone call" and that unwanted calls bear "a close relationship" to the "ancient common law tort" of trespass to chattels). "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related . . . liability rules and consequently intends its legislation to incorporate those rules." Meyer v.

<u>Holley</u>, 537 U.S. 280, 285 (2003). A statute's silence as to those background rules "cannot show that [Congress] intended to apply an unusual modification of those rules." <u>Id.</u> at 286. Thus, we consider the TCPA's language in light of common-law tort principles.

The most relevant tort principle here is that corporate officers can be personally liable for their own torts. Specifically, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." <u>Donsco, Inc. v. Casper Corp.</u>, 587 F.2d 602, 606 (3d Cir. 1978); <u>see also, e.g.</u>, <u>Zubik v. Zubik</u>, 384 F.2d 267, 275 (3d Cir. 1967) ("The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort . . . unless he specifically directed the particular act to be done, or participated, or cooperated therein." (quoting 3 <u>Fletcher Cyclopedia of the Law of Corporations</u> § 1137 (perm. ed. rev. 1965)); <u>Hitchcock v. Am. Plate Glass Co.</u>, 259 F. 948, 953 (3d Cir. 1919) (holding that an officer of a corporation is a joint tortfeasor, along with the corporation, as to torts "which he actually brings about" and "in which he actually participates"). Applying this common-law rule to TCPA claims is consistent with the FCC's interpretation of "sender" because, as long as the officer is sufficiently involved in the illegal fax transmissions, liability lies with him or her as a "person" who is the source of the wrongful conduct. <u>See</u> <u>Palm Beach Golf Center-Boca</u>, 781 F.3d at 1257 ("By construing the sender as the party 'on whose behalf facsimiles are transmitted,' the FCC has placed liability

3

at the source of the offending behavior that Congress intended to curtail." (citation omitted)). Moreover, other statutes that use the term "any person" also have been interpreted to apply to corporate officers. See, e.g., Maryland v. Universal Elections, 787 F. Supp. 2d 408, 416 (D. Md. 2011) (noting several statutes that impose liability on "any person," including corporate officers in their personal capacity). Thus, corporate officers who personally engage in or authorize actions that violate the TCPA may be held liable for those violations.

Miley argues that he cannot be liable under the personal-participation theory because it is equivalent to an aiding-and-abetting claim. His argument fails. Aiding-and-abetting liability "create[s] secondary liability in persons other than the violator of the statute," id. at 184 (citation and internal quotation marks omitted), and thereby extends liability to those who aid the violator, id. at 176. Personal-participation liability differs from aiding-and-abetting liability. The former penalizes a tortfeasor for conduct that violates or causes the violation of the statute, while the latter penalizes conduct that does not itself violate the statute. See Balt.-Wash. Tel. Co. v. Hot Leads Co., 584 F. Supp. 2d 736, 745-46 (D. Md. 2008) (rejecting a claim for aiding-and-abetting a TCPA violation but stating that individual corporate defendants can be liable under the TCPA because of their involvement in sending unsolicited faxes or causing such faxes to be sent); cf. Elec. Lab. Supply Co. v. Cullen, 977 F.2d 798, 803-08 (3d Cir. 1992) (rejecting an aiding-and-abetting theory of liability under the Lanham Act's ex parte seizure provision because the provision specifically governs the "applicant" whose trademark was violated, and the term "applicant" is narrower than the term "any person" under § 43(a) of the Lanham Act, which provides a basis for personal liability of corporate officers). The fact

that a statute does not explicitly provide for aiding-and-abetting liability does not mean that it forecloses personal liability for violations of the statute.

Accordingly, notwithstanding the TCPA's silence as to personal liability for corporate officers and the FCC's interpretation concerning whether a fax broadcaster can be liable, a corporate officer can face personal liability under the TCPA for actions he personally authorized or took. The District Court's instructions properly informed the jury of this basis for liability.

## II

For these reasons, I concur.

5